UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT EARL HACKNEY,

        Petitioner,

v.                                 CIVIL CASE NO. 06-10710
                                 HONORABLE PAUL V. GADOLA

BLAINE LAFLER,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Robert Earl Hackney has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for first-degree criminal sexual conduct. The Court agrees with respondent Blaine Lafler, who has filed a responsive pleading through counsel, that Petitioner's claims do not warrant granting the writ of habeas corpus. Accordingly, the habeas corpus petition will be denied.

### I.      Background

Petitioner was charged in St. Joseph County, Michigan with three counts of first-degree criminal sexual conduct. The charges arose from allegations that Petitioner drove a twelve-year-old girl whom he knew to a wooded area in St. Joseph County and sexually assaulted her by penetrating her vagina with his penis and finger and forcing her to engage in fellatio. There was no forensic evidence, such as hair, semen, or DNA, linking Petitioner to the crime, and he testified that he merely took the complainant for a ride to Three Rivers, Michigan in search of cocaine. He denied touching her. Defense counsel argued to the jury that the complainant was not credible, that there was a lack of scientific evidence tying Petitioner to the crime, that there was no evidence of penile

penetration, and that the complainant's mother fabricated the charges to cover up her own mistreatment of the complainant.

On December 19, 2002, a circuit court jury found Petitioner guilty of one count of first-degree criminal sexual conduct (digital/vaginal penetration). *See* Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under thirteen years of age). The jury acquitted Petitioner of the other two counts (penile/vaginal penetration and fellatio). The trial court sentenced Petitioner as a habitual offender to imprisonment for forty to seventy-five years with credit for 332 days. The Michigan Court of Appeals affirmed Petitioner's conviction, *see People v. Hackney*, No. 249216 (Mich. Ct. App. Feb. 24, 2005), and on November 29, 2005, the Michigan Supreme Court denied leave to appeal. *See People v. Hackney*, 474 Mich. 933; 706 N.W.2d 19 (2005) (table).

Petitioner filed his habeas corpus petition on February 17, 2006. His claims are:

I.      It was reversible error for the trial court to allow Dr. Bowditch's videotaped deposition in lieu of live testimony before the trier of facts in violation of Mr. Hackney's constitutional due process right to confrontation and his right to a fair trial where Dr. Bowditch's videotape[d] testimony was admitted into evidence without a showing that he was constitutionally unavailable and his taped testimony was no substitute for live trial testimony where defendant's right to confrontation and fair trial outweighed any state interest.

II.     Defendant was denied his federal and state constitutional rights to an impartial jury drawn from a fair cross section of the community where there were no African Americans in the array from which his jury was selected due to the systematic exclusion of African American[] residents of the county from circuit jury service.

III.    Defendant's conviction must be reversed where the police department and the prosecution denied the defendant his state and federal constitutional right to due process and a fair trial by failing to fully investigate the charges <US CONST, AM V; MICH CONST 1963 Art 1 § 17>, relegating Mr. Hackney's trial to a credibility contest where the evidence was less than overwhelming.

IV.     Defendant Hackney is entitled to resentencing because the statutory sentencing guidelines were misscored as to offense variable 7 and the sentence is a departure from the statutory sentencing guidelines imposed without compliance with departure requirements.

V.      The trial court violated Mr. Hackney's federal constitutional rights, US CONST AMS V, VI, XIV at sentencing by scoring the statutory sentencing guidelines based on its findings of additional facts which the prosecutor had not charged, which had not been submitted to the jury, and which Mr. Hackney had not admitted.

VI.     The defendant was denied effective assistance of counsel, that counsel's error was so serious as to deprive the defendant [of] a fair trial guaranteed him under the Sixth and Fourteenth Amendment of the U.S. Constitution.

VII.    The prosecution didn't present to the district court sufficient evidence of venue to prove by a preponderance of evidence that this crime occurred (1) in the Township of Constantine and (2) in the County of St. Joseph.

VIII.   The prosecutor violated the defendant's state and federal constitutional right of due process and fair trial by engaging in prejudicial misconduct during trial.

IX.     The prosecutor didn't present sufficient evidence to support the charge of first degree.

X.      The trial court abused its discretion and violated the defendant's due process right under the Fifth and Fourteenth Amendment[s] by admitting into evidence, evidence that did not comply with [a] federal rule and state rule of court.

## II.     Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's

adjudication of his claims on the merits –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

### III.    Discussion

#### A.    Use of a Videotaped Deposition

The first and tenth habeas claims challenge the use of Dr. Brian Bowditch's videotaped deposition at Petitioner's trial. Dr. Bowditch was the physician who examined the complainant following the alleged criminal sexual conduct. Petitioner alleges that the videotaped deposition was inadmissible under the Michigan Court Rules and the Michigan Rules of Evidence. Petitioner also alleges that the admission of Dr. Bowditch's deposition violated his constitutional right to a fair trial and his right to confront the witnesses against him. Petitioner asserts that there was no showing that Dr. Bowditch was constitutionally unavailable or that the prosecution made a good-faith effort to

secure the doctor's attendance at trial.[1]

The United States Court of Appeals for the Sixth Circuit has stated that "the *knowing preparation* of a videotaped deposition as a substitute for the trial testimony *of a constitutionally available witness* is inconsistent with the values of the Confrontation Clause, despite reduced concerns with reliability." *Brumley v. Wingard*, 269 F.3d 629, 642 (6th Cir. 2001) (emphasis in original). However, the Michigan Court of Appeals stated on review of Petitioner's claim that Petitioner waived appellate review of his claim by agreeing to the use of the deposition at trial. The following discussion demonstrates that the state court of appeals relied on an adequate and independent state procedural rule to deny relief and, therefore, Petitioner's claim is procedurally defaulted.

### 1. The Doctrine of Procedural Default

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). At issue here are the rules governing waiver and forfeiture. A party forfeits an issue when he or she fails to make a timely and specific objection at trial. *See People v. Carines*, 460 Mich. 750, 764-65; 597 N.W.2d 130, 138-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Waiver, on the other hand, "has been defined as the intentional

---

[1]

The deposition testimony apparently was never transcribed, and no written record of it was made when the videotape was played for the jury at trial. The Court, however, has been able to determine the content of the deposition testimony from the pleadings and record. According to Petitioner, the doctor testified that the complainant sustained superficial hairline abrasions and tears at the bottom of her vagina and on the skin between her vagina and anus. The doctor described the marks as "suspicious" and likely caused by fingernails. The doctor saw no evidence that an object went beyond the outside of the complainant's vagina, but he admitted that a finger could have been inserted into the complainant's vagina and that the complainant's comments to him at the time of the examination were consistent with his findings.

relinquishment or abandonment of a known right." *People v. Carter*, 462 Mich. 206, 215; 612

N.W.2d 144, 149 (2000) (quotation marks and end citations omitted). The express approval of a

procedure, as opposed to mere failure to object, "constitutes a waiver that *extinguishes* any error."

*Id.* at 216; 612 N.W.2d at 150 (emphasis in original). Confrontation Clause errors may be waived

by a defendant. *Bailey v. Mitchell*, 271 F.3d 652, 657 (6th Cir. 2001).

Petitioner concedes that both he and his attorney agreed to the videotaped deposition. The

parties, in fact, made the following statements at the beginning of the deposition:

> MR. MIDDLETON [Prosecutor]: Mr. Bush, do you have any objection to this
> proceeding that we're doing now, a video deposition of Dr. Bowditch's testimony
> to be used in the event there is a trial in this case?
>
> MR. BUSH [Defense counsel]: I have no objection to that being used.
>
> MR. MIDDLETON: Thank you. And, ah, Mr. Hackney, once again I'll ask you, do you
> have any objection to the procedure we're following this morning?"
>
> DEFENDANT: *None, whatsoever.* [Video deposition (emphasis added).]

Plaintiff-Appellee's Brief on Appeal, Mich. Ct. App. No. 249216, at 3.[2]

At Petitioner's subsequent trial, the prosecutor proposed to play Dr. Bowditch's videotaped

deposition for the jury. The prosecutor explained that,

> [w]e made this videotape last Friday in the library in my office. Mr. Bush was
> present. Mr. Hackney was also present. Doctor Bowditch is on vacation and
> unavailable to testify this week, and they agreed that we use this video deposition
> format, and after we do it, I'll have the tape marked, and I would mark it and ask to
> move it in as People's Exhibit No. 1.

(Tr. Dec. 17, 2002, at 185.) Neither Petitioner, nor his attorney, contradicted the prosecutor's

explanation of what occurred at the deposition, and neither one objected to the playing of the

---

[2] Petitioner has not objected to the accuracy of this quote.

videotape for the jury. The Michigan Court of Appeals therefore concluded that Petitioner intentionally relinquished a known right and that any error was extinguished. This conclusion was an adequate and independent state ground for declining to review Petitioner's claim on the merits, because the waiver and forfeiture rules were in effect before the deposition or Petitioner's trial occurred.

## 2.      Cause and Prejudice

The Supreme Court has held that, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner attempts to establish "cause" for his procedural default by claiming that his attorney should have objected at trial to the admission of the deposition. However, he failed to raise this argument as an independent claim in state court. Although he raised a claim of ineffective assistance of counsel in his *pro se* brief, the grounds for his argument were that counsel failed to (1) investigate a video surveillance tape at a gas station and (2) impeach the complainant and her mother. He did not allege that defense counsel was ineffective for waiving Dr. Bowditch's presence at trial and for failing to object to the use of the videotaped deposition at trial. Therefore, he cannot assert ineffective assistance of counsel as "cause" for his procedural default. *Murray v. Carrier*, 477 U.S. 478, 489 (1986). The Court need not determine whether Petitioner was prejudiced as a result of the alleged confrontation error, because he has failed to establish "cause" to excuse his procedural default of failing to object to the disputed evidence at trial. *Simpson v. Jones*, 238 F.3d

399, 409 (6th Cir. 2000); *see Smith v. Murray*, 477 U.S. 527, 533 (1986).

### 3.    Miscarriage of Justice

The remaining question is whether a miscarriage of justice will occur from the Court's failure to adjudicate the substantive merits of Petitioner's claim. This narrow exception to the general rule that federal courts will not entertain a procedurally defaulted claim requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Petitioner has not presented any new evidence to support a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider his claim on its merits. His claim is procedurally defaulted.

### B.    The Jury Venire

Petitioner alleges that he was denied his constitutional right to an impartial jury drawn from a fair cross-section of the community. Petitioner, who is an African American, states that there were no African Americans in the array from which his jury was selected due to the systematic exclusion of African American residents from circuit court juries. Petitioner further alleges that the under-representation of African Americans in the jury array violated his Fourteenth Amendment right to

equal protection of the law. The Michigan Court of Appeals determined that Petitioner had failed to establish a *prima facie* violation of either the fair-cross-section requirement of the Sixth Amendment or the Equal Protection Clause of the Fourteenth Amendment.

## 1.     The Sixth Amendment Claim

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right to . . . an impartial jury of the State and district wherein the crime shall have been committed . . . ." This right

> includes the right to a jury drawn from a "fair cross section of the community."
> *Taylor v. Louisiana*, 419 U.S. 522, 526 & 530 (1975). As the Supreme Court has
> emphasized, however, there is "no requirement that petit juries *actually chosen* must
> mirror the community." *Id.* at 538 (emphasis added). "Defendants are not entitled
> to a jury of any particular composition, . . . but the jury wheels, pools of names,
> panels or venires from which juries are drawn must not systematically exclude
> distinctive groups in the community and thereby fail to be reasonably representative
> thereof." *Id.* (citations omitted).

*United States v. Forest*, 355 F.3d 942, 953 (6th Cir. 2004).

> In order to establish a prima facie violation of the fair-cross-section
> requirement, the defendant must show (1) that the group alleged to be excluded is a
> "distinctive" group in the community; (2) that the representation of this group in
> venires from which juries are selected is not fair and reasonable in relation to the
> number of such persons in the community; and (3) that this underrepresentation is
> due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Petitioner has satisfied the first component of this test, because "African Americans are a distinctive group in the community." *Forest*, 355 F.3d at 953 (citing *Lockhart v. McCree*, 476 U.S. 162, 175 (1986)). In support of the second component of the test (unfair and unreasonable representation of the group), Petitioner relies on the trial court's comment during *voir dire* that "there are not enough African-Americans who hold driver's licenses, so African-Americans are

disproportionately represented." (Tr. Dec. 17, 2002, at 10.)  The trial court's comment is insufficient evidence of the denial of fair and reasonable representation.  What is required is a numerical showing of the percentage of African Americans who are eligible for jury service in the community from which jury venires are drawn and a comparison of that figure to the percentage of African Americans in the jury venires.  *Forest*, 355 F.3d at 954.  Petitioner has not made this comparison.

Nor has he demonstrated that African Americans were systematically excluded from jury pools in St. Joseph County.  "Systematic" in this context means "inherent in the particular jury-selection process utilized."  *Duren*, 439 U.S. at 366.

"In *Duren*, the underrepresentation was evident in every weekly venire for a period of nearly a year.  Continued underrepresentation made it evident that such underrepresentation was systematic . . . ."  *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988).

Petitioner, on the other hand, has alleged only that African Americans were underrepresented in his jury venire and that the trial judge said African Americans were disproportionately represented in jury pools.  The trial court explained that potential jurors were selected from a list of people holding driver's licenses and Michigan identification cards and that the system was intended to be random.  (Tr. Dec. 17, 2002, at 9-10.)  Petitioner has not shown that underrepresentation was evident week after week for months at a time and that the underrepresentation was inherent in the jury selection process.

In conclusion, Petitioner has failed to show unfair and unreasonable representation of African Americans and systematic exclusion of African Americans from St. Joseph County venires.  Therefore, he has not satisfied the *Duren* test for a *prima facie* violation of the fair-cross-section

provision of the Sixth Amendment.

### 2. The Fourteenth Amendment Claim

Petitioner alleges that the lack of African Americans in the jury venire also violated his right to equal protection of the law under the Fourteenth Amendment to the United States Constitution. "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race or on the false assumption that members of his race as a group are not qualified to serve as jurors." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986) (footnote and citations omitted). However, "[a] defendant who alleges an equal protection violation bears the burden of proving the existence of purposeful discrimination." *Keene v. Mitchell*, __ F.3d __, __, No. 05-3538, 2008 WL 1829671, at *2 (6th Cir. Apr. 25, 2008) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1965)).

According to the trial court, eligible jurors were drawn from a combined list of individuals who had a driver's license or a Michigan identification card. This method of selecting jurors is mandated by state law, *see* Mich. Comp. Laws § 600.1304, and it has been approved by the Michigan Court of Appeals. *People v. Sanders*, 58 Mich. App. 512, 514; 228 N.W.2d 439, 441 (1975).

Petitioner has not shown that the method of selecting jurors in Michigan has a discriminatory purpose. Therefore, he has failed to establish a *prima facie* claim under the Equal Protection Clause.

### C. The Prosecution

The third, seventh, eighth, and ninth habeas claims challenge the strength of the evidence against Petitioner. The third claim alleges that the police department and the prosecution failed to fully investigate the charges. The seventh claim alleges that the prosecutor failed to establish venue.

The eighth claim alleges that the prosecutor suppressed evidence about a defense witness and relied on perjured testimony, and the ninth claim alleges that the evidence was insufficient to sustain Petitioner's conviction.

### 1.    Failure to Investigate

Petitioner claims that his trial was a virtual credibility contest and that the police did not examine his van for forensic evidence, nor seize any clothing. Petitioner also alleges that the police and prosecution did not return to the crime scene, attempt to collect any physical evidence, or preserve evidence that would corroborate the complainant's testimony or exculpate him. The Michigan Court of Appeals reviewed this claim for "plain error" because, in its opinion, Petitioner did not raise the issue in the trial court.

Prosecutors may not suppress evidence favorable to a defendant, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), but they are not required "to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990); *see White v. Tamlyn*, 961 F. Supp. 1047, 1062-63 (E.D. Mich. 1997) (noting that the police have no affirmative duty to investigate a case and that the nonfeasance of the police did not deprive the plaintiff of a constitutional right). Prosecutors also are not required to "remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). The Court therefore finds no merit in Petitioner's claim that the prosecution failed to properly investigate the charges.

### 2.    Venue

Petitioner contends that the prosecution failed to prove that the crime occurred in Constantine Township and St. Joseph County. This contention is not a cognizable claim on habeas

or post-conviction review. *Williams v. United States*, 582 F.2d 1039, 1040-42 (6th Cir. 1978). The issue raises a question of state law, which is not a basis for habeas corpus relief. *Wellman v. Chapleau*, 89 F.3d 837, No. 95-6123, 1996 WL 325212, at *2 (6th Cir. June 12, 1996) (unpublished); *Lundsford v. Hofbauer*, 52 F.3d 325, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) (unpublished opinion citing *Smith v. Sowders,* 848 F.2d 735, 738-39 (6th Cir. 1988)); *Baisden v. Tate*, 869 F.2d 1488, No. 88-3474, 1989 WL 16145, at *1 (6th Cir. Feb. 13, 1989) (unpublished). Furthermore, the prosecutor was required to show only that the crime occurred in St. Joseph County. *See* Mich. Comp. Laws § 762.8 (indicating that felonies are prosecuted in the county where the act was committed); *see also* Tr. Dec. 18, 2002, at 46. The twelve-year-old complainant was unable to point out where the crime occurred. However, when an officer took her to a place that fit her description of the wooded area where Petitioner assaulted her, she began to cry and tremble, and she looked terrified. The officer concluded that the area might be the site of the crime. The area was located within the legal boundary for the Village of Constantine, which lies in St. Joseph County, and it was generally consistent with the victim's testimony. (Tr. Dec. 18, 2002, at 26-28.) Petitioner himself testified that he took the complainant from Constantine, Michigan to Three Rivers, Michigan and back home to Constantine. (Tr. Dec. 18, 2002, at 88-93.) Both cities lie within St. Joseph County. Thus, by his own admissions, venue was established.

### 3. Suppression of Evidence; Perjury

Petitioner alleges next that the prosecutor failed to disclose the existence of a witness, who could have testified that Petitioner was at home working on a vehicle at the time of the alleged assault. Petitioner also alleges that the prosecutor relied on, and failed to correct, perjured testimony

regarding the time of the alleged sexual assault.

As noted above, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A prosecutor may not solicit false evidence or allow it to go uncorrected, *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), but to establish that the prosecutor used perjured testimony, Petitioner must show that the testimony relied upon was both false and material and that the prosecutor knew the testimony was false. *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995).

Petitioner does not claim to have discovered any new evidence that the prosecutor failed to disclose. He bases his *Brady* claim on the fact that the prosecutor asked him on cross-examination whether he connected some wires to the wrong spark plugs while he was working on a vehicle on July 3, 2002. Petitioner answered, "Yes, I did." (Tr. Dec. 18, 2002, at 107.) Petitioner assumes from the prosecutor's question that the prosecutor must have known about a witness who saw him working on the vehicle at the time of the assault because no one else knew about the crossed wires.

Petitioner's argument is based on mere speculation that the prosecutor knew about an additional witness, who may have helped the defense. The prosecutor could have acquired the information from a source other than an undisclosed witness. The evidence was not "material" in any event, because both Petitioner and a friend of his testified that Petitioner was working on a vehicle on the day of the assault, and Petitioner testified that the complainant did not get in his van until later that day. Petitioner's claim fails because he has not shown that the prosecutor failed to disclose material evidence favorable to the defense.

Petitioner's perjury claim also fails. He claims that two prosecution witnesses committed perjury when they testified that the crime occurred between 3:00 p.m. and 9:00 p.m. on July 3, 2002. *See* Tr. Dec. 17, 2002, at 78 and 83-84 (Angelica Terry's testimony that the complainant got in Petitioner's car about 2:00 or 3:00 p.m. and that Petitioner returned home about 8:00 or 9:00 p.m.); *id*. at 98-102 and 123 (Latarsha Davis's testimony that, between 3:00 and 4:00 p.m. she learned that the complainant had climbed in the car with "Bobby" and that the complainant returned home about 9:00 p.m.). Petitioner asserts that this testimony was false, because a police officer testified that the complainant was reported missing at 8:30 p.m. and that she returned home about an hour later. The officer testified on cross-examination, however, that the complainant had been absent for a couple of hours by the time her mother reported her missing. Furthermore, Angelica Terry and Latasha Davis could have been mistaken, as opposed to lying, about the time frame for the events of July 3, 2002. Petitioner has failed to show that the prosecutor relied on false testimony concerning the time of the assault and that the prosecutor knew the testimony was false.

### 4.      Sufficiency of the Evidence

Petitioner alleges that the prosecutor did not present sufficient evidence to support the jury's determination that he sexually penetrated the victim. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphases in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W.2d 869, 871 (1993).

Petitioner was convicted of violating Mich. Comp. Laws § 750.520b(1)(a), which requires a showing of sexual penetration with a person under thirteen years of age. The state legislature has defined "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body. . . ." Mich. Comp. Laws § 750.520a(p).

The complainant's age on the day in question was not a disputed issue (Tr. Dec. 19, 2002, at 22-23), and she testified that Petitioner placed his finger in her vagina two times. (Tr. Dec. 17, 2002, at 140 and 142.) The victim's testimony alone, if believed by the trier of fact, was sufficient to support a conviction of criminal sexual conduct. *See People v. Smith,* 205 Mich. App 69, 71; 517 N.W.2d 255, 256 (1994). It did not need to be corroborated. Mich. Comp. Laws § 750.520h. Furthermore, the examining physician testified that a finger could have been placed in the complainant's vagina.

Although Petitioner denied touching the complainant, it was the jury's duty to weigh the probative value of the evidence and to resolve any conflicts in the testimony. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.

1992)).  An assessment of the witnesses' credibility is beyond the scope of a federal court on habeas review.  *Id.* (citing *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000)).  The mere existence of sufficient evidence therefore defeats Petitioner's claim.  *Id.* at 788-89.

In conclusion, a rational juror could have determined that the prosecution proved the essential elements of the crime beyond a reasonable doubt.  Therefore, the state court's conclusion -- that the evidence was sufficient to sustain the conviction for first-degree criminal sexual conduct -- was not contrary to, or an unreasonable application of, *Jackson v. Virginia*, 443 U.S. 307 (1979).

### D.    Trial Counsel

Petitioner alleges that his trial attorney's errors were so serious that the attorney deprived him of a fair trial guaranteed to him under the Sixth and Fourteenth Amendments to the Constitution.

The Michigan Court of Appeals concluded on review of Petitioner's claim that Petitioner received effective assistance of counsel and that he was not entitled to relief on this issue.

To prevail on a claim of ineffective assistance, a habeas petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.

A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id*. at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700.

### 1.    The Gas Station Tape

Petitioner alleges that his attorney failed to investigate or prepare an adequate defense. More specifically, Petitioner contends that his attorney failed to secure a surveillance videotape from a gas station where he stopped on the day of the crime. He claims that the tape would have proved his innocence by demonstrating that the complainant did not seek help or try to escape and, instead, sat in his vehicle by herself while he purchased gas and drinks.

The Michigan Court of Appeals determined that the tape was destroyed before defense counsel was appointed to represent Petitioner. The complainant, moreover, admitted on cross-examination by defense counsel that she did not seek help or try to escape while Petitioner bought gas and other items at the gas station. (Tr. Dec. 17, 2002, at 157-58.) Therefore, defense counsel's failure to obtain the tape did not prejudice the defense.

### 2.    Dr. Bowditch's Testimony

Petitioner alleges that his attorney performed inadequately in connection with Dr. Bowditch's testimony. Although Petitioner did not raise this claim in his state appellate briefs, the claim lacks merit for the following reasons.

Petitioner contends that his attorney failed to advise him of his constitutional right to confront Dr. Bowditch at trial, but the record indicates that Petitioner was aware of his right to confront the witnesses against him. He wrote to his attorney before trial and expressed his desire to have Dr. Bowditch testify before the jury.[3]

---

[3] As noted, he subsequently waived his right to have Dr. Bowditch testify at trial.

Next, Petitioner contends that defense counsel should have impeached Dr. Bowditch's conclusions and questioned Dr. Bowditch about the complainant's injuries. Petitioner's own summary of Dr. Bowditch's testimony indicates that defense counsel asked the doctor about the complainant's bruises and abrasions and the doctor's medical conclusions. *See* Brief in Support of Habeas Corpus Petition, at 7-8. The prosecutor elicited additional information needed to explore and assess the doctor's expert opinion.

Finally, Petitioner contends that defense counsel should have objected to the use of Dr. Bowditch's videotaped testimony. Defense counsel was not constitutionally ineffective for agreeing to depose Dr. Bowditch before trial because he was able to cross-examine Dr. Bowditch at the deposition, and the jurors were able to view the doctor's demeanor when they watched the videotape of the deposition.

As for defense counsel's failure to object to the admission of the deposition testimony at trial, the omission likely did not prejudice Petitioner. Dr. Bowditch testified that the complainant's hymen was intact and that a large object could not have penetrated the complainant's vagina. This testimony could have been the reason for Petitioner's acquittal on the charge of penetrating the complainant's vagina with his penis. The doctor also testified about the refusal of the complainant's mother to remain at the hospital until someone could interview her. This testimony supported the defense theory that the complainant's mother fabricated the charges against Petitioner to cover up her own wrongdoing.

Even if defense counsel had been able to convince the trial court to exclude the deposition testimony, there was enough evidence to convict Petitioner with just the complainant's testimony. The Court therefore concludes that defense counsel's performance was not deficient and the

allegedly deficient performance did not prejudice the defense.

### 3. The Complainant's Mother

Petitioner alleges that defense counsel should have questioned the complainant's mother about her abusive treatment of the complainant. Defense counsel did ask the complainant's mother whether it was true that she had beat the complainant for about ten minutes with an extension cord. The mother claimed in response that she did not remember. (Tr. Dec. 17, 2002, at 115.) Defense counsel also called a witness, who testified that she observed numerous welts and bruises on the complainant and that the complainant's mother admitted to "whooping" the complainant. (Tr. Dec. 18, 2002, at 51.)

The prosecutor also elicited information about the beating. The complainant's mother testified on direct examination by the prosecutor that she "whooped" the complainant on her arms with an extension cord when the child came home late. (Tr. Dec. 17, 2002, at 104.) The complainant confirmed that her mother beat her with an extension cord after she arrived home from being with Petitioner. (*Id*. at 149.) Significantly, however, the complainant testified that her mother beat her on her arm, not her buttocks or "private" area (*id*. at 152), and Petitioner concedes that Dr. Bowditch testified that he did not think a belt caused the vaginal injuries.

The Court concludes that defense counsel's performance was not deficient and that the allegedly deficient performance did not prejudice Petitioner. Therefore, the state court's conclusion that defense counsel was constitutionally effective did not result in a decision that was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).

### F. The Sentence

The fourth and fifth habeas claims challenge the scoring of the state sentencing guidelines.

Petitioner alleges that offense variables 3, 4, 7, 8, 10, and 12 were misscored and that the trial court relied on facts, which he did not admit and which a jury did not ascertain beyond a reasonable doubt.

Petitioner's challenge to the scoring of the state sentencing guidelines lacks merit because questions of state sentencing law, and the scoring of state sentencing guidelines in particular, are not cognizable on federal habeas corpus review. *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Long v. Stovall*, 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006). As succinctly explained by the Sixth Circuit,

> [a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir.1991); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L. Ed.2d 606 (1990)).

*Howard v. White*, 76 Fed. Appx. 52, 53, 2003 WL 22146139, at *2 (6th Cir. Sept. 16, 2003) (unpublished).

Petitioner's constitutional argument is based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The Supreme Court held in *Apprendi* that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Supreme Court explained in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original).

A majority of the Supreme Court indicated in *Blakely* that its decision applied only to determinate sentencing systems. *See id*. at 308-09. Michigan has an indeterminate sentencing

system in which the minimum sentence generally is based on sentencing guidelines and the maximum sentence is set by law, not by the trial court. *People v. Harper*, 479 Mich. 599, 612-13; 739 N.W.2d 523, 531-32 (2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1444 (2008); *People v. Claypool*, 470 Mich. 715, 730 n.14; 684 N.W.2d 278, 286 n.14 (2004). Consequently, Petitioner's sentence is not affected by the Supreme Court's decision in *Blakely* or *Apprendi*. Petitioner's constitutional argument has no merit, and his state law claim is not cognizable on habeas review.

### IV.     Conclusion

The state court's rejection of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly,

**IT IS ORDERED AND ADJUDGED** that the petition for a writ of habeas corpus [docket entry #1] is **DENIED**.

**SO ORDERED.**

Dated:   June 20, 2008                              s/Paul V. Gadola
                                                    HONORABLE PAUL V. GADOLA
                                                    UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   June 20, 2008   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                     Debra M. Gagliardi                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:          Robert Earl Hackney          .

                     s/Ruth A. Brissaud
                     Ruth A. Brissaud, Case Manager
                     (810) 341-7845